**KESSLER TOPAZ**
   **MELTZER & CHECK, LLP**
Eric L. Zagar (Bar No. 250519)
280 King of Prussia Road
Radnor, PA 19087
Phone: (610) 667-7706
Fax: (610) 667-7056
*Attorney for Plaintiff*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEY WEST POLICE OFFICERS & FIREFIGHTERS RETIREMENT PLAN<br><br>            Plaintiff,<br><br>    v.<br><br>SKECHERS U.S.A., INC., ROBERT GREENBERG, and MICHAEL GREENBERG,<br><br>            Defendants. | Case No.  2:25-cv-4863<br><br>**VERIFIED COMPLAINT** |

Plaintiff Key West Police Officers & Firefighters Retirement Plan ("Plaintiff"), by the undersigned attorneys, submits this Verified Complaint (the "Complaint") against the defendants named herein, and alleges upon personal knowledge with respect to itself, and upon information and belief based upon, among other things, a review of public filings, press releases and reports, and an investigation undertaken by Plaintiff's counsel, as to all other allegations herein, as follows:

## I.   NATURE AND SUMMARY OF THE ACTION

1.     This is an action brought by Plaintiff, a stockholder of Skechers U.S.A., Inc. ("Skechers" or the "Company"), against the Company, Skechers Chairman and Chief Executive Officer Robert Greenberg, and Skechers Director and President Michael Greenberg (together with Robert Greenberg, the "Greenbergs"), seeking to remedy the defendants' violations of federal securities law.

2.     On May 4, 2025, Skechers entered into a merger agreement (the "Merger Agreement") with private equity firm 3G Capital and certain of its affiliates (collectively, "3G").[1]   The Merger Agreement will result in a going-private merger pursuant to which Skechers will be acquired by 3G for $9.4 billion (the "Merger").[2]   The Merger Agreement offers Skechers stockholders either (i) a full cash consideration option of $63 per share in cash (the "Cash Consideration Option"), or (ii) a mixed consideration option of $57 per share in cash plus one unit of the new LLC (an "LLC Unit") that will own the privately-held Skechers (the "Mixed Consideration Option").[3]

3.     The Merger Agreement further provides that Skechers stockholders must elect a consideration option (the "Consideration Election") "five Business Days preceding the

---

[1]  Skechers U.S.A, Inc., Current Report (Form 8-K) (May 5, 2025), Ex. 2.1 (the Merger Agreement), attached hereto as Exhibit A.

[2]  *See* Merger Agreement §§ 2.1, 2.7(b)(i)–(ii).

[3]  Merger Agreement § 2.7(b)(i)–(ii).

anticipated closing date" of the Merger (the "Consideration Election Deadline").[4]   Any share that does not make a Consideration Election will be automatically paid in accordance with the Cash Consideration Option.[5]

4.      The Merger is subject to Section 13(e) of the Securities Exchange Act, 15 U.S.C. § 78m(e) ("Section 13(e)"), and Securities & Exchange Commission ("SEC") Rule 13e-3, 17 C.F.R. § 240.13e-3 ("Rule 13e-3") promulgated thereunder, titled "Going private transactions by certain issuers or their affiliates," which prohibits such a transaction unless the issuer and its affiliates engaging in the transaction file with the SEC and disseminate to the issuer's stockholders a Schedule 13E-3 containing specified disclosures.   Neither Skechers nor the Greenbergs have done so, and they have made no representation that they intend to do so.

5.      As a result, immediate action must be taken to prevent Plaintiff from being forced to make the Consideration Election without full and accurate information concerning the Merger, the Company, and its financial condition and prospects.   Accordingly, through this action, Plaintiff seeks declaratory and injunctive relief declaring that the Merger is a "Rule 13e-3 transaction" and enjoining Skechers and the Greenbergs (collectively, "Defendants") from enforcing the Consideration Election Deadline and from closing the Merger until Defendants file with the SEC and disseminate to Skechers stockholders a Schedule 13E-3 containing the disclosures required by Rule 13e-3.

## II.   <u>JURISDICTION AND VENUE</u>

6.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and § 27 of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78aa, because it involves a claim for violation of Section 13(e) of the Exchange Act and Rule 13e-3 promulgated thereunder.

---

[4] Merger Agreement § 2.9(b)(i)(2).

[5] Merger Agreement § 2.7(b)(iii).

7.     Personal jurisdiction exists over each of the Defendants because they either conduct business in or maintain operations in this District or have sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendants by this Court permissible under traditional notions of fair play and substantial justice.

8.     Venue is proper because Defendant Skechers resides in this District and Defendants Robert Greenberg and Michael Greenberg are citizens of the State of California. 28 U.S.C. § 1391.

## III.   <u>PARTIES</u>

9.     Plaintiff, a pension plan for the benefit of police officers and firefighters of Key West, Florida, is a holder of shares of Skechers Class A Common Stock.

10.     Defendant Skechers is a Delaware corporation with its principal place of business at 330 South Sepulveda Boulevard, Manhattan Beach, California 90266.

11.     Defendant Robert Greenberg is Skechers' Chairman of the Board and Chief Executive Officer. He co-founded the Company in 1992 and is the beneficial owner of a majority of the Company's outstanding stockholder voting power. Upon information and belief, Robert Greenberg is a citizen of the State of California.

12.     Defendant Michael Greenberg, Defendant Robert Greenberg's son, is a director of Skechers and President of the Company. He co-founded the Company in 1992, alongside Robert Greenberg, and the two control the operations of the Company. Upon information and belief, Michael Greenberg is a citizen of the State of California.

## IV.   SUBSTANTIVE ALLEGATIONS

### A.   Background of the Company

13.   Skechers is a publicly-traded Delaware corporation (NYSE: "SKX") with its corporate offices in Manhattan Beach, California.[6]  The Company was founded in 1992 by the Greenbergs.[7]  Skechers designs, develops, and markets a diverse range of footwear, apparel, and accessories.[8]

14.   Defendant Robert Greenberg beneficially owns 92.6% of the Company's outstanding Class B Common Stock, which holds ten votes per share, and his immediate family members own another 7.4%.[9]  Defendant Robert Greenberg also beneficially owns 12.3% of the Company's publicly-traded Class A Common Stock, which holds one vote per share.[10]  The Greenbergs, together with other members of the Greenberg family and various family trusts for which the Greenbergs serve as trustees, beneficially own approximately 60% of the Company's outstanding stockholder voting power.[11]   As a result of their ownership of more than a majority of Skechers' outstanding stockholder voting power, the Greenbergs control all matters that require stockholder approval, including the election of directors and the approval of mergers or other business combination transactions.

---

[6] *See, e.g.*, Skechers U.S.A., Inc., Annual Report (Form 10-K) (Feb. 28, 2025) (the "2024 10-K") at 5, attached hereto as Exhibit B.  The Company was incorporated in California in 1992 and reincorporated in Delaware in 1999.  *Id.* at 2.

[7] *Id.* at 2.

[8] *Id.*

[9] *Id.* at 14.

[10] Skechers U.S.A., Inc., Beneficial Ownership Report (Schedule 13D/A) (May 5, 2025), attached hereto as Exhibit C.

[11] Skechers U.S.A, Inc., Form 425 (May 5, 2025) (the "May 5, 2025 Press Release"), attached hereto as Exhibit D.

15.    The Company is the third largest athletics footwear company in the world, which the Company attributes to its innovative comfort technology products, supported by impactful marketing, as well as a diverse distribution strategy, a dedicated global employee base, and a loyal network of partners.[12]

16.    According to Robert Greenberg, "over the last three decades, Skechers has experienced tremendous growth" and the Company's success is due to its "commitment to excellence and innovation across the entire Skechers organization, in-demand comfort-focused product offering, and loyal partners."[13]  The Company described 2024 as "another year of exceptional performance," citing record sales quarters that led to $9 billion in annual sales.[14]

17.    Skechers has increased its sales both domestically and internationally, with the latter representing a "key focus for long-term growth."[15]  The Company "accomplished this growth despite ongoing economic challenges, including inflationary pressures and geopolitical uncertainties."[16]  Despite expectations that those inflationary pressures and geopolitical uncertainties would continue into 2025, the Company believed that its "resilient global brand" would allow it to continue its growth trajectory, emphasizing its diverse product portfolio, established network of retail stores, robust online presence, and vast market reach and stable infrastructure and operations.[17]

---

[12] 2024 10-K at 2.

[13] May 5, 2025 Press Release.

[14] 2024 Summary Annual Report, SKECHERS, https://investors.skechers.com/financial-data/annual-reports (last visited May 23, 2025) (the "2024 Summary Annual Report"), attached hereto as Exhibit E.

[15] *Id.*

[16] *Id.*

[17] *Id.*

18.     On April 24, 2025, Skechers announced that it had achieved record quarterly sales of $2.41 billion, a year-over-year increase of 7.1%.[18]   As recently as January 2025, the Company's share price was hovering around $75 per share.

**B.     The Going-Private Merger**

19.     Despite posting positive financial metrics in 2024 and 2025, on May 5, 2025, Skechers announced its agreement to a going-private Merger with 3G.[19]

20.     The Merger Agreement provides Skechers stockholders with specific election mechanics for the two consideration options, with a Consideration Election Deadline of "five Business Days preceding the anticipated Closing Date."[20]   Stockholders can elect to receive either $63.00 per share in cash or $57.00 per share in cash plus one LLC Unit.[21] Any share that does not make a Consideration Election will be automatically paid in accordance with the Cash Consideration Option.[22]

21.      Skechers has two classes of authorized common stock: Class A Common Stock and Class B Common Stock.  The Company's Class A Common Stock, registered under Section 12 of the Exchange Act and listed on the New York Stock Exchange ("NYSE"),[23] would be deregistered and delisted upon the Merger's close.[24]   Skechers announced that the parties to the Merger will file a registration statement on a Form S-4 that will contain the Company's preliminary information statement and preliminary

[18] Skechers U.S.A., Inc., Current Report (Form 8-K) (Apr. 24, 2025), Ex. 99.1 (the "April 24, 2025 Press Release"), attached hereto as Exhibit F.

[19] May 5, 2025 Press Release.

[20] Merger Agreement § 2.9.

[21] Merger Agreement § 2.7(b)(i)–(ii).

[22] Merger Agreement § 2.7(b)(iii).

[23] 2024 10-K at Ex. 4.2.

[24] Skechers U.S.A, Inc., Current Report (Form 8-K) (May 5, 2025) (the "May 5, 2025 8-K"), attached hereto as Exhibit G.

-6-

prospectus.[25]   Once the information statement becomes effective, Skechers expects to mail a definitive information statement to its stockholders.[26]

22.     Through their ownership of more than a majority of the Company's outstanding stockholder voting power and their positions as directors and senior executive officers of the Company, the Greenbergs control Skechers.[27]

23.     The Greenbergs have elected the Mixed Consideration Option, and therefore they will retain some of their equity ownership interest in Skechers following the closing of the Merger, which could amount to up to 20% of the privately-held Skechers.[28] Furthermore, following the closing of the Merger, "the Company will continue to be led by Chairman and Chief Executive Officer Robert Greenberg, President Michael Greenberg, and the rest of the current management team."[29]

24.     The Merger raises red flags, with at least one analyst calling the deal "very surprising" because the Company has "always been viewed as a family business that wasn't for sale."[30]   It appears that the Greenbergs controlled the sales process to a single bidder and deprived the minority stockholders of any legitimate bidding process.   Reports surrounding

---

[25] May 5, 2025 Press Release.

[26] *Id.*

[27] May 5, 2025 8-K.

[28] *See* Skechers U.S.A, Inc., Current Report (Form 8-K), Ex. 10.2 (the "Support Agreement") § 4, attached hereto as Exhibit H.

[29] May 5, 2025 Press Release.

[30] Sabrina Escobar, *Skechers Stock Soars on 'Very Surprising' Buyout Deal From 3G Capital*, BARRONS (MAY 5, 2025), https://www.barrons.com/articles/skechers-stock-buyout-deal-cf76dd04.

the Merger Agreement suggest that "Skechers was not running an auction and the deal was bilateral as 3G Capital has had a long relationship with the Greenbergs."[31]

25.    Defendants have not made the required Schedule 13E-3 disclosures in connection with the Merger, nor have they represented that they intend to do so.  Neither the expiration of the Consideration Election Deadline nor closing of the Merger is conditioned on the filing and dissemination of a valid Schedule 13E-3.

26.    If the Consideration Election Deadline expires and the Merger closes without Defendants having made the required Schedule 13E-3 disclosures, Plaintiff (and other Skechers stockholders) will be stripped of their right to make a Consideration Election fully informed of all the information required to be disclosed in a valid Schedule 13E-3.

## COUNT I

**Against All Defendants**
**For Violation of Section 13(e) of the Exchange Act**
**and Rule 13e-3 Promulgated Thereunder**

27.    Plaintiff incorporates by reference all preceding and subsequent paragraphs as if set forth fully herein.

28.    Rule 13e-3, 17 C.F.R. § 240.13e-3, promulgated pursuant to Section 13(e) of the Exchange Act, 15 U.S.C. § 78m(e), provides that "it shall be unlawful for an issuer which has a class of equity securities registered pursuant to section 12 of the [Exchange] Act, or an affiliate of such issuer, to engage, directly or indirectly, in a Rule 13e-3 transaction unless," among other things, the issuer or affiliate files with the SEC and disseminates to the company's stockholders a Schedule 13E-3 containing specific information.  17 C.F.R. § 240.13e-3(b)(2).

---

[31] Savyata Mishra & Abigail Summerville, *Skechers to go private for $9.42 billion in biggest sneaker industry deal*, REUTERS (May 6, 2025), https://www.reuters.com/markets/deals/footwear-brand-skechers-be-taken-private-9-billion-deal-2025-05-05/.

29.     The Greenbergs control Skechers through their majority ownership of Skechers' stockholder voting power and their directorial and management roles at the Company, and are therefore affiliates of Skechers for purposes of Section 13(e) and Rule 13e-3.

30.     The Greenbergs are engaging in the Merger for purposes of Section 13(e) and Rule 13e-3.

31.     Defendants Skechers, Robert Greenberg, and Michael Greenberg have failed to file with the SEC or disseminate to Skechers stockholders, and do not intend to file with the SEC or disseminate to Skechers stockholders, a Schedule 13E-3 in connection with the Merger, as required by Section 13(e) and Rule 13e-3.

32.     Plaintiff is threatened with irreparable harm in the absence of the Schedule 13E-3 disclosures required by Rule 13e-3.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests entry of an order and judgment as follows:

A. Declaring that the Merger is a "Rule 13e-3 transaction" as defined in Rule 13e-3;

B. Enjoining the Consideration Election Deadline and the closing of the Merger until Defendants file with the SEC and disseminate to Skechers stockholders a Schedule 13E-3 containing the disclosures required by Rule 13e-3;

C. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' fees, accounts' and experts' fees, costs and expenses; and

D. Granting such other further relief as the Court deems just and proper.

1    Dated:  May 29, 2025

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**KESSLER TOPAZ**
   **MELTZER & CHECK, LLP**

*/s/ Eric L. Zagar*

Eric L. Zagar (Bar No. 250519)
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

*Counsel for Plaintiff*

Robert D. Klausner
**KLAUSNER, KAUFMAN, JENSON &**
**LEVINSON**
7080 N.W. 4th Street
Plantation, FL  33317
Telephone: (954) 916-1202

*Additional Counsel for Plaintiff*

-10-

## VERIFICATION

I, Terry Garcia, Chairman of the Key West Police Officers & Firefighters Retirement Plan ("Plaintiff") have reviewed the allegations in the foregoing Verified Complaint, know the contents thereof, and authorize its filing. The allegations as to Plaintiff are true and correct, and with regard to the allegations of which I do not have personal knowledge, I rely upon my counsel and their investigation and believe them to be true and correct.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 29 TH day of _____MAY_____, 2025.

Terry Garcia, Chairman
Key West Police Officers & Firefighters
Retirement Plan