**LATHAM & WATKINS LLP**
Blair Connelly (Bar No. 174460)
1271 Avenue of the Americas
New York, NY 10020
T: 212.906.1658
  *blair.connelly@lw.com*

Kristin Murphy (Bar No. 268285)
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626-1925
T: 714.540.1235
  *kristin.murphy@lw.com*

J. Christian Word (*pro hac vice*
forthcoming)
555 Eleventh Street, NW
Suite 1000
Washington, D.C. 20004-1304
T: 202.637.2223
  *christian.word@lw.com*

Attorneys for Defendant Skechers
U.S.A., Inc.

**O'MELVENY & MYERS LLP**
Daniel M. Petrocelli (Bar No. 97802)
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067-6035
T: 310.553.6700
  *dpetrocelli@omm.com*

Abby F. Rudzin (*pro hac vice*
forthcoming)
1301 Avenue of the Americas,
Suite 1700
New York, NY 10019
T: 212.326.2000
  *arudzin@omm.com*

*Attorneys for Defendants Robert
Greenberg and Michael Greenberg*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEY WEST POLICE OFFICERS & FIREFIGHTERS RETIREMENT PLAN<br><br>Plaintiff,<br><br>v.<br><br>SKECHERS U.S.A., INC., ROBERT GREENBERG, and MICHAEL GREENBERG,<br><br>Defendants | Case No. 2:25-cv-04863 PA (JPRx)<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION TO EXPEDITE BRIEFING AND HEARING ON MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Courtroom:  9A<br>Hon. Percy Anderson |

# I.    INTRODUCTION

Plaintiff asks this Court to determine whether an SEC rule applies to a merger transaction *before* the SEC has had the opportunity to address that issue itself.  Worse yet, Plaintiff asks this Court to do so on an expedited basis—even though Plaintiff waited almost an entire month to seek that relief.  Plaintiff has not met its heavy burden of showing that such relief is warranted.  Plaintiff has not identified any imminent deadline by which its motion must be heard—because there is no such deadline.  There is no reason why Plaintiff's motion for preliminary injunction cannot be heard on a normal schedule.

On May 5, Skechers announced that it had entered into a merger agreement with an unaffiliated third-party buyer.  That same day, Skechers filed a copy of the merger agreement with the Securities and Exchange Commission.  As Plaintiff notes in its motion papers, nothing in the merger agreement or Skechers' public statements indicates that Skechers will file a Schedule 13E-3 with the SEC.  That is because Rule 13e-3 does not apply to the transaction.  Skechers instead plans to file a Schedule 14C Information Statement that will form part of the Form S-4—the registration statement that will be filed by the third-party buyer—which will include all the information required under the SEC rules for a transaction of this nature.

Once the third-party buyer files its Form S-4, the SEC will have an opportunity to review the document and provide any comments it may have.  If the SEC determines in that review process that the transaction is subject to Rule 13e-3, then Skechers will have no choice but to file a Schedule 13E-3.  If the SEC determines that the transaction is not subject to Rule 13e-3, and does not have any other concerns, then the SEC will declare the Form S-4 "effective."  At that point, the Information Statement contained in the Form S-4 will be mailed to Skechers' stockholders, who will then have an opportunity to elect the form of merger consideration they prefer.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

*None of this has taken place yet*.  The third-party buyer has not yet filed its Form S-4.  The SEC therefore has not even had the chance to consider whether Rule 13e-3 applies—let alone declare the Form S-4 effective so that the Information Statement can be mailed to Skechers' stockholders.  And *no deadline has been established* by which the stockholders must decide which form of consideration they wish to receive.  All of that will play out over the coming weeks or months.

Nor is there any reason for this Court to address these issues now.  Plaintiff has no private right of action to enforce SEC Rule 13e-3; the SEC itself can do so in the normal course of its review process.  If the SEC determines that Rule 13e-3 does not apply, there will be no reason for this Court to reconsider the SEC's application of its own rule.  And if the SEC determines that Rule 13e-3 does apply, this action will be moot.  Either way, there is no reason why the Court needs to wade into these issues now—let alone do so on an expedited schedule.

The Court should deny the *ex parte* motion.

## II.    BACKGROUND

### A.    The Transaction

On May 5, Skechers (the "Company") announced that it had entered into a merger agreement under which 3G Capital ("3G") will acquire all outstanding shares of the Company (the "Merger").  Ex. 1 (Press Release).  A committee of independent Skechers directors reviewed, negotiated, and unanimously recommended the Merger, and the full Skechers board unanimously approved it.  *Id.*   Under the terms of the Merger, Skechers stockholders may elect to receive either (i) $63.00 in cash or (ii) a mixed consideration of $57.00 plus one LLC unit in the post-Merger entity. *Id.*  Skechers also filed a Form 8-K disclosing the transaction terms and included a copy of the Merger Agreement. Ex. 2 (May 5 Form 8-K).  As disclosed to Skechers stockholders in the May 5 Press Release, a Form S-4 registration statement is forthcoming and will contain additional disclosures.  *See* Ex. 1.

**B.    Plaintiff's Suit and *Ex Parte* Application**

Three and a half weeks later, on May 29, Plaintiff filed this action alleging that Skechers violated Rule 13e-3 by failing to file a Schedule 13E-3.  Compl. ¶¶ 28–32.  Five days later—on June 3—Plaintiff filed a preliminary injunction motion seeking to enjoin any stockholder consideration election or closing unless and until a Schedule 13E-3 is filed.  That same day, Plaintiff filed the present *ex parte* application to shorten time, requesting a hearing date of June 30.  Plaintiff claims that absent an expedited hearing, stockholders will be forced to decide whether to take cash consideration or the mixed cash and LLC unit consideration without the benefit of a Schedule 13E-3.  Plaintiff's *ex parte* motion does not identify any imminent deadline to justify the need for a June 30 hearing.

**C.    SEC Filings Are Ongoing and Will Follow the Proper Process**

Skechers already told investors that an entity formed by 3G intends to file a Form S-4 (which will contain Skechers' Schedule 14C Information Statement), which will then be subject to SEC review.  *See* Ex. 1 (Press Release); *see also* Ex. 2 (May 5 Form 8-K) ("STOCKHOLDERS ARE URGED TO READ THE INFORMATION STATEMENT/PROSPECTUS AND OTHER DOCUMENTS THAT WILL BE FILED WITH THE SEC CAREFULLY AND IN THEIR ENTIRETY WHEN THEY BECOME AVAILABLE BECAUSE THEY WILL CONTAIN IMPORTANT INFORMATION ABOUT THE TRANSACTION.") (emphasis in original).

As is customary, the SEC may issue comments, including any questions about whether the transaction requires the filing of a Schedule 13E-3.  Skechers and 3G will then have an opportunity to respond—which may include sharing its analysis as to why the companies believe a Schedule 13E-3 is *not* required—and the SEC will then determine whether further disclosure is needed.[1]

---

[1] *See generally* U.S. Sec. & Exch. Comm'n, *Filing Review Process*, https://www.sec.gov/about/divisions-offices/division-corporation-finance/filing-review-process-corp-fin (last visited June 3, 2025).

1    If the SEC concludes that a Schedule 13E-3 is required, the Company will file

2    it before the SEC declares the Form S-4 effective and will mail it to stockholders at

3    least 20 days before any corporate action (or stockholder election) is taken, as

4    required by Rule 13e-3(e)(1)(ii).  This lawsuit would then be moot.

5    If, on the other hand, the SEC agrees with the Company that a Schedule 13E-

6    3 is *not* required, and the SEC has no other concerns arising from its review, it can

7    declare the Form S-4 effective.  *See* 17 C.F.R. § 230.461 (authorizing the SEC to

8    declare a registration statement effective).  At that point—and *only* at that point—

9    the third-party buyer can mail the Information Statement to the stockholders, who

10    would then have an opportunity to elect the form of consideration they prefer.  *See*

11    17 C.F.R. §§ 230.460, 230.461 (registration statement must be declared effective

12    before mailing, and delivery of the prospectus must precede or accompany the offer

13    of securities).

14    As of today, the Form S-4 has not even been *filed*, let alone declared effective

15    by the SEC.  The Information Statement therefore has not yet been mailed to

16    stockholders, and *no deadline has been established for stockholders to make their*

17    *election*.

18    **III.    LEGAL STANDARD**

19    "A plaintiff faces an exceedingly high burden when seeking relief on an ex

20    parte basis." *Hernandez v. Ly*, 2025 WL 1415763, at *2 (C.D. Cal. Apr. 11, 2025)

21    (Anderson, J.) (citing *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp.

22    488, 492 (C.D. Cal. 1995)).  To justify *ex parte* relief, "the evidence must show that

23    the moving party's cause will be irreparably prejudiced if the underlying motion is

24    heard according to regularly noticed motion procedures" and that "the moving party

25    is without fault in creating the crisis that requires ex parte relief."  *Mission Power*

26    *Eng'g,* 883 F. Supp. at 492.  In other words, the *ex parte* application "must show

27    why the moving party should be allowed to go to the head of the line in front of all

28    other litigants and receive special treatment."  *Id.*

# IV.    ARGUMENT

Plaintiff has failed to provide any justification for the extraordinary relief it now seeks—*i.e.*, has provided no explanation of the irreparable prejudice Plaintiff *might* face if its motion for a preliminary injunction is heard on a regularly noticed schedule.   That is because there is none: There is no looming deadline on the stockholder election.  And even if there were, Skechers announced the transaction nearly a month ago, but Plaintiff waited until yesterday to seek emergency relief. Because Plaintiff is at fault in creating this purported "crisis," and has not shown irreparable prejudice from a normal schedule, its *ex parte* motion should be denied.

## A.    Plaintiff Cannot Show Irreparable Prejudice from Proceeding on a Normal Schedule

Plaintiff identifies no real emergency.  The Form S-4 has not yet been filed; the SEC has not yet reviewed it, let alone declared it effective; it has not yet been mailed to stockholders; no stockholder election deadline has been set; and the Merger closing is not imminent.  There is more than sufficient time to address any legitimate motion under a normal briefing schedule.

Plaintiff's alleged harm—having to make an election "without the benefit" of a 13E-3—is speculative.  The SEC has not even had an opportunity to consider whether a Schedule 13E-3 is required (nor even had the opportunity to review the parties' preliminary filings), and Defendants are unaware of any case in which a court has ever ordered a company to file one absent such a determination.  Plaintiff asks this Court to order an emergency schedule based on events that are purely hypothetical at this point.  If the SEC staff provides comments on the Form S-4, and if the SEC then determines a Schedule 13E-3 is required, Skechers will of course comply—and stockholders will receive it well in advance (20 days) of any final decision-making.  And if the SEC concludes that a Schedule 13E-3 is *not* required, there will be no reason for this Court to second-guess the SEC's application of its own rule to these facts.  If the SEC itself has determined that no Schedule 13E-3 is

required, Plaintiff will be unable to establish either a likelihood of success on the merits, or irreparable harm from not receiving disclosures that the enforcement agency has deemed unnecessary.[2]  Nor will Plaintiff be able to show that the public interest is served by re-litigating the SEC's application of its own rule.

### B.    Plaintiff Is Responsible for Creating Any Claimed Emergency

The Merger was announced on May 5.  That same day, the Company filed a Form 8-K with the SEC that included the Merger Agreement as an exhibit.  At that point, Plaintiff was on notice of the facts on which their motion is based—*i.e.*, that the Merger Agreement "makes no representation that the Company or the Greenbergs will file and disseminate a valid Schedule 13E-3," and that it did not "condition the expiration of the Consideration Election Deadline or the closing of the Merger on the filing and dissemination of a valid Schedule 13E-3."  Pl.'s Mem. of P. & A. in Supp. of Mot. for Prelim. Inj., ECF No. 11-1 ("Pl.'s PI Mem."), at 2.

Plaintiff then waited nearly *four weeks* to file suit, and another *five days* to file this application and the motion for a preliminary injunction.  That delay is fatal under *Mission Power Eng'g*, 883 F. Supp. at 492.  If Plaintiff had filed sooner, its motion could have been heard under a normal schedule even before Plaintiff's arbitrary requested hearing date.  Any purported urgency is of Plaintiff's own making.  This Court routinely rejects *ex parte* applications where, as here, the movant could have filed the motion earlier or could have anticipated the need for relief.  *See, e.g., Miloedu, Inc. v. James*, 2021 U.S. Dist. LEXIS 227225, at *6 (C.D. Cal. Nov. 24, 2021) (Anderson, J.) (rejecting *ex parte* application for TRO in part because "[t]he briefing and evidence filed in support of the Ex Parte TRO does not sufficiently explain what prejudice Plaintiff might suffer if the relief it seeks were presented through a regularly-noticed Motion for Preliminary Injunction"); *19th Capital Grp., LLC v. 3 GGG's Truck Lines, Inc.*, 2018 WL 5796349, at *2 (C.D. Cal. May 7, 2018)

---

[2] Even if the Court were inclined to entertain such a motion, Plaintiff could file it if and when the Form S-4 is declared effective (which will be publicly disclosed).

(Anderson, J.) (no *ex parte* relief where "Plaintiffs have again failed to identify any facts that justify relief on an ex parte basis rather than by properly noticed motion"); *Bank of N.Y. Mellon v. White*, 2022 WL 4596600, at *2 (C.D. Cal. Sep. 16, 2022) (Anderson, J.) (no *ex parte* relief where plaintiff's delay created emergency); *Corp. Realty USA, LLC v. Sunny Acre, LLC*, 2020 EL 6871018, at *1-3 (C.D. Cal. Aug. 12, 2020) (Anderson, J.) (rejecting *ex parte* application for TRO where it was not "clear why Plaintiff did not request relief earlier and thus effectively made the situation an emergency").

## C.    Plaintiff's Meritless Theory Cannot Justify Special Treatment

Even apart from timing, Plaintiff's motion fails on the merits.  As Defendants will fully brief in the opposition to Plaintiff's preliminary injunction motion, Rule 13e-3 does not create an express private right of action, and the Ninth Circuit has never found an implied right of action.  Moreover, the U.S. Supreme Court held in *Alexander v. Sandoval*, 532 U.S. 275 (2001), that courts may not imply a private right of action to enforce regulations unless the underlying statute contains rights-creating language that demonstrates clear congressional intent.  *See id.* at 286 ("The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy.").  Section 13(e), the statutory basis for Rule 13e-3, contains no such language.  *See* 15 U.S.C. § 78m(e).  *Sandoval* thus forecloses an implied right of action under Rule 13e-3.  Notably, Plaintiff does not even cite *Sandoval*, let alone engage with the analysis it requires.  Instead, Plaintiff references *Cort v. Ash*, 422 U.S. 66 (1975), whose broader four-factor approach the Supreme Court abandoned in *Sandoval* in favor of a singular focus on congressional intent.  *See* Pl.'s PI Mem. at 6–7 n.2 (citing "the *Cort* factors analysis").

The only federal appellate decision to find a private right of action under Rule 13e-3, *Howing Co. v. Nationwide Corp.*, 826 F.2d 1470 (6th Cir. 1987), predates *Sandoval* and analyzed Section 13(e) under the discredited *Cort* factors test.

1    Plaintiff cites only two post-*Sandoval* cases, and neither court analyzed the private-

2    cause-of-action issue.  *See Hanley v. Warburg Pincus Cap. Co., L.P.*, 2005 WL

3    8161161 (D. Ariz. Aug. 11, 2005); *In re Initial Pub. Offering Sec. Litig.*, 241 F.

4    Supp. 2d 281, 299 (S.D.N.Y. 2003).

5         Defendants are aware of no court that has ever conducted the analysis required

6    under Sandoval and held that Section 13(e) permits a private party to bring a Rule

7    13e-3 claim.  The only court that appears to have conducted this analysis declined

8    to recognize a private right of action.  *See Boylan v. Sogou Inc.*, 2021 WL 4198254

9    (S.D.N.Y. Sept. 13, 2021) (finding no private cause of action under Rule 13e-3).

10   The SEC—not private plaintiffs—has exclusive enforcement authority.

11   **V.    CONCLUSION**

12        There is no basis to conclude that Plaintiff "should be allowed to go to the

13   head of the line in front of all other litigants and receive special treatment." *Mission*

14   *Power Eng'g*, 883 F. Supp. at 492.  Defendants respectfully request that Plaintiff's

15   Application be denied.

1   Dated:  June 4, 2025                    Respectfully submitted,

2

3   By: */s / Blair Connelly*_____    By: */s / Daniel M. Petrocelli*_____

4   Blair Connelly                          Daniel M. Petrocelli
    **LATHAM & WATKINS LLP**                **O'MELVENY & MYERS LLP**
5   1271 Avenue of the Americas             1999 Avenue of the Stars, 7th Floor
    New York, NY 10020                      Los Angeles, CA 90067-6035
6   T: 212.906.1658                         T: 310.553.6700
      blair.connelly@lw.com                   dpetrocelli@omm.com
7
    Kristin Murphy                          Abby F. Rudzin (*pro hac vice*
8   **LATHAM & WATKINS LLP**                forthcoming)
    650 Town Center Drive, 20th Floor       **O'MELVENY & MYERS LLP**
9   Costa Mesa, CA 92626-1925               1301  Avenue   of   the   Americas,
    T: 714.540.1235                         Suite 1700
10    kristin.murphy@lw.com                 New York, NY 10019
                                            T: 212.326.2000
11  J. Christian Word (*pro hac vice*         arudzin@omm.com
    forthcoming)
12  **LATHAM & WATKINS LLP**                *Attorneys for Defendants Robert*
    555 Eleventh Street, NW                 *Greenberg and Michael Greenberg*
13  Suite 1000
    Washington, D.C. 20004-1304
14  T: 202.637.2223
      christian.word@lw.com
15
    *Attorneys for Defendant Skechers*
16  *U.S.A., Inc.*

17

18

19

20

21

22

23

24

25

26

27

28

1

## ATTESTATION

2      I, Blair Connelly, am the ECF User whose ID and password are being used to

3 file this Opposition. In compliance with Civil L.R. 5-4.3.4(a)(2)(i), I hereby attest

4 that concurrence in the filing of this document has been obtained from each four of

5 the other signatories.

6

7 Dated: June 4, 2025

8                                            By: */s/ Blair Connelly*

9                                            Blair Connelly
                                             **LATHAM & WATKINS LLP**

10                                           *Attorney for Defendant Skechers U.S.A., Inc*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Skechers U.S.A., Inc., certifies that this brief contains eight pages, which complies with the page number set by the court order dated June 4, 2025.

Dated: June 4, 2025

By: */s/ Blair Connelly*
Blair Connelly
**LATHAM & WATKINS LLP**
*Attorney for Defendant Skechers U.S.A., Inc*